IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02912-REB-CBS

JACQUES RICHARDSON,
          Plaintiff,
v.

SUSAN BUTLER,
JOHN DAVIS,
DAVE COTTEN,
DR. T. FISHER,
KERRI BARONI, and
DEBBIE CAMPBELL,
          Defendants.

---

## RECOMMENDATION REGARDING CDOC DEFENDANTS' MOTION TO DISMISS

---

Magistrate Judge Shaffer

THIS MATTER comes before the court on Defendants Susan Butler, John Davis, Dave Cotten, Kerri Baroni, and Debbie Campbell's (collectively the "CDOC Defendants") Motion to Dismiss (doc. #41), filed on April 8, 2013. Plaintiff Richardson filed his Response to the Defendants' Motion to Dismiss (doc. #53) on May 9, 2013. Pursuant to the Order of Reference dated February 4, 2012 (doc. #28) and separate memorandum dated April 9, 2013, the instant motion was referred to this Magistrate Judge. The court has reviewed the parties' briefs, the pleadings, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the following reasons, I recommend that Defendants' motion be granted.

## BACKGROUND

The *pro se* Plaintiff, Jacques Richardson, commenced this action on November 5, 2012 with the filing of a Prisoner Complaint. At that time, Mr. Richardson was incarcerated at the Buena Vista

Correctional Facility (BVCF).[1]  Plaintiff's original Complaint asserted two claims for relief based upon violations of the Eighth Amendment, and named the CDOC Defendants, as well as Dr. T. Fisher[2] and Tom Clements.[3]  On November 19, 2012, Mr. Richardson moved for Leave to Amend Complaint (doc. #6), indicating that he wished to file an amended complaint that would "include all facts as well as all Request (sic) for Relief."  That motion was granted by Magistrate Judge Boyd Boland on November 26, 2012.  Three days later, Plaintiff filed an Amended Prisoner Complaint (doc. #14).

On December 7, 2012, Magistrate Judge Boland issued an Order Directing Plaintiff to File Second Amended Complaint (doc. #16).  In particular, Judge Boland found that the Amended Complaint was

---

[1]Mr. Richardson was transferred to Fremont Correctional Facility on February 12, 2013. *See* Doc. #34.

[2]Although he is named in the Second Amended Complaint, the court was advised on February 6, 2013 that Dr. Fisher is no longer employed by the Colorado Department of Corrections (CDOC).  *See* Doc. #30.  Notwithstanding the fact that he has not been properly served pursuant to Fed. R. Civ. P. 4, Mr. Richardson insists that Dr. Fisher should remain in this action simply because he was a CDOC employee during the relevant time period.

A court cannot obtain personal jurisdiction over a party without proper service of process.  *Conyac v. Noonan*, No. 11-cv-02730-PAB-CBS, 2013 WL 4434369, at *3-4 (D. Colo. Aug. 16, 2013) (copies of unpublished cases cited are attached to this Recommendation).  *See also Murphy Brothers, Inc. v. Mitchetti Pipe Stringing, Inc.,* 526 U.S. 344, 350 (1999) ("Before a ... court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.") (citation omitted).  Rule 4(m) of the Federal Rules of Civil Procedure provides that the court shall dismiss an action without prejudice as to any defendant who has not been served within 120 days of the filing of the action.  While an incarcerated *pro se* plaintiff proceeding *in forma pauperis* is entitled to rely on the U.S. Marshal for service of the summons and complaint, the U.S. Marshal and the Clerk of the Court have performed their duties to serve Dr. Fisher.  The court need not require the U.S. Marshal to search for or make any further attempts to serve this defendant.  Accordingly, this court recommends that Dr. Fisher be dismissed from this action without prejudice for failure to effect service within the time limit prescribed by Rule 4(m).

[3]Mr. Clements, now deceased, was formerly the Executive Director of the Colorado Department of Corrections.  On February 1, 2013, Mr. Clements was dismissed from this action based on Plaintiff's failure to allege his personal participation in any constitutional violation. *See* Order to Dismiss in Part and Draw Case to a District Judge and to a Magistrate Judge (doc. #24).

deficient because Mr. Richardson had failed "to allege facts to show that each of the named Defendants, in their individual capacities, participated in a deprivation of his constitutional rights." Mr. Richardson was told that "[p]ersonal participation by the named defendants is an essential allegation in a civil rights action" and that his allegations must demonstrate "an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise." If he wished to pursue additional allegations against Department of Corrections personnel, Mr. Richardson was advised to include those allegations in a second amended complaint. Judge Boland gave Mr. Richardson thirty days to file "a second amended complaint that complies with the directives in this Order." Plaintiff filed his Second Amended Complaint (doc. #18), the operative pleading in this case, on December 26, 2012.

The Second Amended Complaint alleges that Mr. Richardson is disabled because of a chronic knee injury. Mr. Richardson states that while he was incarcerated at BVCF in 2011, Dr. Fisher imposed several medical restrictions which gave Plaintiff a disability status. In October 2011, Defendants Davis, the BVCF Warden, and Defendant Cotten, a BVCF Major and the ADA facility coordinator, approved Mr. Richardson's transfer to Sterling Correctional Facility, an ADA-designated facility which allowed Plaintiff daily access to a gym, the library, employment and housing living areas. However, in October 2012, Defendant Butler, the DOC Offender Services Supervisor, transferred Mr. Richardson back to BVCF, a non ADA-designated facility. At that time, Defendant "Davis, medical personnel and case management" told Plaintiff that he would not remain at BVCF because of his medical restrictions and necessary accommodations. Mr. Richardson insists that at the time of his return to BVCF, "all of Plaintiff's medical restrictions were still active and still in place." On October 16, 2012, Defendant Campbell, the BVCF Case Manager Supervisor, informed Plaintiff that Defendant Baroni, the BVCF Health Services Administrator, and Dr. Fisher had removed his medical restrictions. Mr. Richardson alleges that there was no valid basis for removing the restrictions, given that Dr. Fisher had not evaluated

3

his knee upon Plaintiff's return to BVCF, and his condition had worsened since his transfer to Sterling, causing him to use crutches.

In his first claim, Mr. Richardson alleges that Defendants Davis, Cotten, Baroni, Campbell and Butler violated his Eighth Amendment right to be free from cruel and unusual punishment by "placing Plaintiff in a knowing hazardous facility endangering Plaintiff's health both physical (sic) and mentally." (*See* doc. # 18).  Mr. Richardson contends that his return to BVCF  resulted in "numerous falls due to the structure of the facility," and prevented him from "partak[ing] in the incentive programs, general library, gym, . . . housing areas and employment."  The First Claim alleges that all the named defendants "have the power to remove Plaintiff from the hazardous environment" they have placed him in, but have refused to do so.  Mr. Richardson insists that Defendants personally participated in the alleged constitutional violation "by official omission."

Plaintiff's second claim also alleges a violation of the Eighth Amendment.  Mr. Richardson avers that Dr. Fisher and Defendant Baroni removed his medical restrictions "without his knowledge, without his consent, and without any physical examination or medical treatment since the removal of Plaintiff from BVCF in 2011." (*See* doc. # 18 at 9 of 14).  More specifically, the second claim points to "falsifying reports by Dr. Fisher inside of the Plaintiff's medical file, the deliberate disregard to Plaintiff's ADA approved accommodations by all named defendants, [and] the continuous disregard of medical attention to which the Plaintiff continued to request by filing medical request."

The third claim does not specifically reference any individual defendant, but generally alleges that on October 9, 2012, "said named Defendants knowingly with knowledge of Plaintiff's history of medical limitations, restrictions and ADA accommodations did place Plaintiff in a serious physical, mental environment" and have deliberately kept Mr. Richardson in that environment despite having the authority to remove him from those hazards.

Plaintiff has sued the CDOC Defendants in their official and individual capacities.  The Second Amended Complaint seeks Mr. Richardson's removal from BVCF, restoration of Plaintiff's medical restrictions and ADA accommodations, and placement in a DOC facility that provides Mr. Richardson with access to all programs, a gym facility, library, employment "and incentives."  (*See* doc. # 18).  Mr. Richardson also seeks compensatory damages.

The CDOC Defendants have moved to dismiss the Second Amended Complaint[4] pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  In summary, the CDOC Defendants contend that Mr. Richardson has failed to state a plausible claim under the Eighth Amendment or the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, *et seq*., and that Plaintiff's constitutional claims are barred by the qualified immunity doctrine.  Defendants further argue that Mr. Richardson's pursuit of compensatory damages is barred by the Prison Litigation Reform Act and the Eleventh Amendment, to the extent damages are sought against the Defendants in their official capacities.  Finally, the CDOC Defendants assert that Mr. Richardson's request for injunctive relief is moot in light of his transfer to Fremont Correctional Facility.

In his Response, Mr. Richardson insists that the Second Amended Complaint does properly allege violations of his "constitutional rights, the Americans with Disability Act, State law, and the administrative regulations of the Colorado Department of Corrections."  Mr. Richardson attached to his Response various Exhibits that he contends "show the facts stated within the Plaintiff's Complaint."[5]

---

[4]During the Preliminary Scheduling Conference held on April 23, 2013, the court discussed with Plaintiff possible pleading deficiencies in the Second Amended Complaint.  In light of the court's comments,  Mr. Richardson requested additional time to amend his complaint.  The court granted that request and directed Mr. Richardson to file a third amended complaint on or before May 14, 2013.  *See* Doc. #47.  I also told Mr. Richardson that if he did not file a new amended complaint, he should file a response to the CDOC Defendants' Motion to Dismiss on or before May 14, 2013.  A Third Amended Complaint was never filed.

[5]"[I]f matters outside the pleadings are presented to and not excluded by the court, [a Rule 12(b)(6) motion] shall be treated as one for summary judgment and disposed ov as provided in Rule 56. . . . ."  *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10ᵗʰ Cir. 1996).

# ANALYSIS

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a motion to dismiss may be granted if the court does not have subject matter jurisdiction.  The determination of subject matter jurisdiction is a threshold question of law.  *Madsen v. United States ex. rel. United States Army Corps of Engineers*, 841 F.2d 1011, 1012 (10th Cir. 1987).  As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear.  *See* U.S. Const. Art. III, §2; *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994).  The court applies a rigorous standard of review when presented with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  *Consumers Gas & Oil, Inc. v. Farmland Indus. Inc.*, 815 F. Supp. 1403, 1408 (D. Colo. 1992).  Ultimately, "[t]he burden of establishing subject matter jurisdiction is on the party asserting jurisdiction."  *Stine v. Wiley*, No. 07-cv-01250-WYD-KMT, 2008 WL 4277748, at *3 (D. Colo. 2008).

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  *See* Fed. R. Civ. P. 12(b)(6).  At this stage of the proceedings, the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010), quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a

---

However, courts have broad discretion in determining whether to accept materials beyond the pleadings.  *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998).  I find that Mr. Richardson's exhibits are not necessary to resolve the issues raised in the CDOC Defendants' motion, and I have not considered those exhibits in any way.  I have, however, construed the Second Amended Complaint in a light most favorable to Mr. Richardson and have given him the benefit of every inference that could reasonably be drawn from his allegations.

claim to relief that is plausible on its face." *Id.* As the Tenth Circuit explained in *Ridge at Red Hawk,*

*L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007), "the mere metaphysical possibility that *some*

plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must

give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support

for *these* claims." "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken

as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th

Cir. 2008) (quoting *Twombly*, 555 U.S. at 556). A complaint must set forth sufficient facts to elevate a

claim above the level of mere speculation. *Id.*

> The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence
> that the parties might present at trial, but to assess whether the plaintiff's complaint alone is
> legally sufficient to state a claim for which relief may be granted. In doing so, the Court
> must accept all the well-pleaded allegations of the complaint as true and must construe
> them in the light most favorable to the plaintiff. However, the Court need not accept
> conclusory allegations. . . . Even though modern rules of pleading are somewhat forgiving,
> a complaint still must contain either direct or inferential allegations respecting all the
> material elements necessary to sustain a recovery under some viable legal theory. The
> plausibility standard requires that relief must plausibly follow from the facts alleged, not
> that the facts themselves be plausible.

*Jordan-Arapahoe, LLP v. Board of County Commissioners of the County of Arapahoe*, Nos. 08-cv-02790-

PAB-CBS, 08-cv-02794-PAB-CBS, 2009 WL 2924777, at *2 (D. Colo. Sept. 9, 2009) (internal quotation

marks and citations omitted). The ultimate duty of the court is to "determine whether the complaint

sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under

the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

1.    *Claims Against Defendants in their Official Capacity*

To the extent that Mr. Richardson is suing the CDOC Defendants in their official capacities, he is

in reality attempting to impose liability on their employer, the Colorado Department of Corrections. *See*

*Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988). A suit against a state official in his or her

official capacity is treated as a suit against the state. *Hafer v. Melo*, 112 S.Ct. 358, 361 (1991). Absent a

waiver, the Eleventh Amendment forbids a suit for damages against a state in federal court. *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). Eleventh Amendment immunity extends to the states themselves and to those governmental entities that are "arms of the state." *Ambus*, 995 F.2d at 994. States, state officials sued in their official capacities, and governmental entities that are considered "arms of the state" are not "persons" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). Such entities cannot be sued for monetary damages arising from alleged conduct that deprives a plaintiff of his or her civil liberties. The Colorado Department of Corrections is an arm of the state and thus is entitled to Eleventh Amendment immunity.

The Eleventh Amendment, however, does not bar actions in federal court seeking injunctive relief against state officials. *See Ex parte Young*, 209 U.S. 123, 159-60 (1908) (holding that the Eleventh Amendment generally does not bar official-capacity claims seeking prospective injunctive relief from a state official). *See also Will*, 491 U.S. 58, 71 n. 10 (1989) ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State.") (internal quotation marks and citation omitted). To the extent that Mr. Richardson is suing the CDOC Defendants in their official capacities for money damages, that claim must be dismissed. The court proceeds to evaluate whether Mr. Richardson states a claim against the CDOC Defendants in their individual capacities or in their official capacities for injunctive relief.

B.      *Qualified Immunity*

The CDOC Defendants have raised the defense of qualified immunity as to any claims asserted against them in their individual capacities. Under the doctrine of qualified immunity, government officials are immune from civil damages liability for constitutional torts as long as their actions could

8

reasonably have been thought consistent with the rights they are alleged to have violated. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Qualified immunity protects defendants not only from liability, but also from suit. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Such immunity is qualified in that it does not obtain when otherwise immune officials violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Armijo v. Wagon Mound Public Schools*, 159 F.3d 1253, 1260 (10th Cir. 1998) (quoting *Clanton v. Cooper*, 129 F.3d 1147, 1153 (10th Cir. 1997)). Whether Defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

This court must review Defendants' claim of qualified immunity "under the customary motion to dismiss standard." *Currier v. Doran*, 242 F.3d 905, 917 (10th Cir. 2001). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* However, the court is also mindful of the United States Supreme Court's admonition that a ruling on the issue of qualified immunity should be made at the earliest possible stage of the proceeding in order to preserve the protections of the privilege. *See Saucier v. Katz*, 533 U.S. 194 (2001).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted). In determining whether a right is clearly established, the relevant inquiry is "whether it would be clear to a [reasonable government official] that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* "Qualified immunity is applicable unless" the

9

plaintiff can satisfy both prongs of the inquiry. *Id.* The plaintiff bears the burden of showing with particularity facts and law establishing the inference that the defendant violated a clearly established federal constitutional or statutory right. *Walter v. Morton*, 33 F.3d 1240, 1242 (10th Cir. 1994).

The defense of qualified immunity also implicates the pleading requirements of Fed. R. Civ. P. 8(a). *Robbins,* 519 F.3d at 1248. Qualified immunity insures that public officials are not subjected to "'broad-ranging discovery' that can be peculiarly disruptive of effective government." *Anderson v. Creighton*, 483 U.S. 635, 646 n. 6 (1987).

> Although we apply "the same standard in evaluating dismissal in qualified immunity cases as to dismissals generally," complaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically involve complex claims against multiple defendants. . . . Without allegations sufficient to make clear the "grounds" on which the plaintiff is entitled to relief, it would be impossible for the court to perform its function of determining, at an early stage in the litigation, whether the asserted claim is sufficient clear.

*Robbins,* 519 F.3d at 1249. The court will proceed to apply these standards to the claims asserted in the Second Amended Complaint.

C.     *Plaintiff's Eighth Amendment Claims*

Title 42 U.S.C. § 1983 creates a cause of action where a "person . . . under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution." Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979). To establish a claim under § 1983, a plaintiff must prove he was deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

The court has construed "the second amended complaint liberally as asserting a § 1983 claim against the Defendants for violation of his Eighth Amendment right to be free from prison officials' deliberate indifference to a substantial risk of harm to his health or safety, as well as a claim under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132 (2012)." (*See* "Order to Dismiss in Part and to Draw Case to a District Judge and to a Magistrate Judge" (doc. # 24)).  Mr. Richardson's first and third claims appears to allege Eighth Amendment violations based upon the conditions of confinement he faced while at BVCF between October 2012 and February 12, 2013.  I interpret the second claim as asserting an Eighth Amendment claim based upon Defendants' deliberate indifference to Mr. Richardson's knee injury and associated medical conditions.  While these claims for relief may allege separate Eighth Amendment violations, the legal standard governing these claims is the same.

The Eighth Amendment prohibits cruel and unusual "punishments."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  On a motion to dismiss an Eighth Amendment claim, an inmate must allege facts demonstrating that the deprivation suffered or the medical condition at issue was objectively "serious" and that the defendant had a "sufficiently culpable state of mind" or was "deliberately indifferent" to the inmate's health or safety.  *Id.* at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-303 (1991)).  To survive a motion to dismiss, the Second Amended Complaint must allege facts supporting both the objective and subjective elements essential for an Eighth Amendment claim.

The Eighth Amendment requires prison officials to "provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care." *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)).  The Supreme Court has acknowledged that prison conditions may be "'restrictive and even harsh'" without violating the Eighth Amendment.  *See Rhodes v. Chapman*, 143 U.S. 337, 347 (1981). The objective prong of the Eighth Amendment standard "turns not only on the severity of the alleged

deprivations, but also on their duration." *Bainum v. Sedgwick County Commissioners*, No. 01-3207, 27 F. App'x 965, 969 (10th Cir. 2001). "In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while substantial deprivations of shelter, food, drinking water, and sanitation may meet the standard despite shorter duration." *DeSpain,* 264 F.3d at 973 (citations and internal quotation marks omitted). The Supreme Court also recognizes that "*[s]ome* conditions of confinement may establish an Eighth Amendment violation 'in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth or exercise.'" *Wilson v. Seiter*, 501 U.S. at 304. In determining whether the inmate has been subjected to "sufficiently serious conditions" of confinement, the court must balance the exigencies of running a prison and the "broad and idealistic concepts of dignity, civilized standards, humanity and decency" embodied in the Eighth Amendment. *Id.* at 973.

The Second Amended Complaint does not allege a denial of basic necessities, such as food, clothing, shelter or sanitation. Rather, Mr. Richardson broadly asserts that his chronic knee condition and loss of medical restrictions and/or ADA accommodations effectively prevented him from participating in unspecified incentive programs and employment opportunities, as well as accessing the library, gym and various housing areas at BCVD. *But see Simpson v. Sebenick*, No. 12-634-C, 2013 WL 2644728, at *11 (W.D. Okl. June 11, 2013) (while an inmate has a constitutional right of access to the court, that does not equate to an "abstract, freestanding right to a law library") and *Howard v. Jaramillo*, No. 07-cv-01268-CMA-CBS, 2008 WL 5381469, at *8 (D. Colo. Dec. 22, 2008) (noting that inmates do not have a constitutional right to preferable housing assignments). For purposes of the pending motion, this court need not decide whether Mr. Richardson's cursory allegations, standing alone, are sufficient to demonstrate unconstitutional conditions of confinement, because the first and third claims clearly fail to

satisfy the subjective prong of the Eighth Amendment standard.

The second claim challenges Defendants' alleged failure to treat or properly address his medical conditions. To satisfy the objective standard for this Eighth Amendment claim, Mr. Richardson must allege facts showing that he suffered from an objective serious medical need or condition; that is a condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).[6] To the extent that Mr. Richardson's second claim is based on a delay in receiving medical care, he must show that the alleged delay resulted in substantial harm.

> That "substantial harm" can be the ultimate physical injury caused by the prisoner's illness, so long as the prisoner can show that the more timely receipt of medical treatment would have minimized or prevented the harm. The "substantial harm" can also be an intermediate injury, such as the pain experienced while waiting for treatment and analgesics. Although "not every twinge of pain suffered as a result of delay in medical care is actionable," when the pain suffered during the delay is substantial, the prisoner "sufficiently establishes the objective element of the deliberate indifference test."

*Kikumura v. Osagie*, 461 F.3d 1269, 1292 (10th Cir. 2006) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000)), *overruled on other grounds, Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008). For purposes of the pending motion, I will presume that Mr. Richardson's chronic knee injury satisfies the objective prong of the second claim. But as to this claim as well, the Second Amended Complaint does not set forth an actionable Eighth Amendment violation.

The subjective prong of the Eighth Amendment standard follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834.

---

[6]Factors that may be indicative of a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain," as well as the "potential for harm if medical care is delayed or denied." *Gutierrez v. Peters*, 111 F.3d 1364, 1373, n. 8 (7th Cir. 1997) (internal quotation marks and citation omitted).

A finding of deliberate indifference requires a showing that the defendant "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837.  Under this standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*  Deliberate indifference requires a higher degree of fault than negligence or even gross negligence. *Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489, 1495-96 (10th Cir. 1990).  The Supreme Court explained the test for deliberate indifference:

> a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837.  *See also Barrie v. Grand County, Utah*, 119 F.3d 862, 869 (10th Cir. 1997).  "To be guilty of deliberate indifference, the defendant must know he is creating a substantial risk of bodily harm." *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (internal quotation marks and citation omitted).

Finally, to properly assert a claim under § 1983, Mr. Richardson must set forth sufficient facts to demonstrate that Defendants personally participated in the alleged Eighth Amendment violations. *Cf. Persaud v. Doe*, No. 06-6234, 213 F. App'x 740, 743 (10th Cir. 2007).  *See also Mitchell v. Maynard,* 80 F.3d 1433, 1441 (10th Cir.1996) (personal participation is an essential allegation in a civil rights action) (citation omitted).  A defendant may not be held liable merely because of his or her supervisory position. *Grimsley v. MacKay,* 93 F.3d 676, 679 (10th Cir.1996).  There must be an affirmative link between the alleged constitutional violation and the defendant's own participation or failure to supervise. *Butler v. City of Norman,* 992 F.2d 1053, 1055 (10th Cir.1993).  *Cf. Stidham v. Peace Officer Standards and Training,* 265 F.3d 1144, 1157 (10th Cir.2001) (for a § 1983 claim, an affirmative link between the defendant's conduct and any constitutional violation "must be alleged in the complaint as well as proven at trial").

From the descriptions contained in the Second Amended Complaint, it appears that each of the CDOC Defendants has "supervisory" responsibilities. "A plaintiff may therefore succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional violation, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.* at 1199. Although the first claim broadly alludes to "policy and customs under which unconstitutional practices occurred," the Second Amended Complaint does not identify those policies or customs or identify any particular Defendant having responsibility for those policies or customs.

When weighed against the foregoing established precedents, Mr. Richardson's constitutional claims fail to allege facts that demonstrate each of the CDOC Defendants had the requisite state of mind and participated in the alleged violations. Mr. Richardson alleges that each Defendant was "involved" in his original transfer from BVCF due to "medical restrictions and ADA accommodations," and therefore summarily asserts that each defendant had "the power to remove Plaintiff from the hazardous environment they have placed Plaintiff in but yet refuse to do so."[7] Mr. Richardson contends that each Defendant personally participated in the alleged constitutional violations "by official omission."[8] That

---

[7]As evidence of BVCF's hazardous environment, Mr. Richardson alleges that because of his knee injury and loss of medical restrictions, he fell on numerous occasions. That fact does not, without more, demonstrate that Defendants were deliberately indifferent to his medical condition. *Cf. Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004) (noting that "[a] 'slip and fall,' without more, does not amount to cruel and unusual punishment . . . .").

[8]Although Plaintiff accuses Defendants of being deliberately indifferent to his medical condition and associated restrictions, the Second Amended Complaints acknowledges that upon his return to BVCF, Mr. Richardson was told that the transfer was temporary and that he "would not remain [at BVCF] do (sic) to his medical issues, ADA accommodations and medical restrictions." Indeed, Mr. Richardson was transferred from BVCF approximately five months later.

conclusory allegation will not suffice. *Luttrell v. Corrections Corp. of America*, No. 10-3137-SAC, 2010 WL 2817266, at *2 (D. Kan. July 16, 2010) (to recover for an Eighth Amendment violation, the plaintiff must "allege facts showing the personal participation of each person named as defendant by describing the acts or omissions of each individual defendant including the dates and times or each incident . . . and other facts showing how the acts of each defendant violated plaintiff's federal constitutional rights"). *Cf. Elliot v. Staton*, No. 3:11-cv-1536-ST, 2012 WL 2374986, at *12 (D. Or. April 20, 2012) (to establish individual liability for a plaintiff's civil rights claim, the personal participation inquiry "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional violation"). Although the second claim alleges that Defendant Baroni and Dr. Fisher removed Mr. Richardson's medical restrictions without his knowledge or consent, and without any physical examination or treatment, that allegation alone, does not indicate that Defendant Baroni acted with deliberate indifference. *Cf. Perkins v. Kansas Department of Correction*, 165 F.3d 803, 811 (10th Cir. 1999) (holding that a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation). *See also Farmer*, 511 U.S. at 838 (holding that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation," will not sustain a claim under the Eighth Amendment).

The Second Amended Complaint must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations" against the entire group of defendants. *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011) (quoting *Robbins*. 519 F.3d at 1250) (emphasis in original). *See also Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011). The purpose of this pleading requirement is two-fold: "'to ensure that a defendant is placed on notice of his or her alleged

misconduct sufficient to prepare an appropriate defense,' and 'to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim.'" *Kansas Penn Gaming, LLC*, 656 F.3d at 1215 (quoting *Pace v. Swerdlow*, 519 F.3d 1067, 1076 (10th Cir. 2008) (Gorsuch, J., concurring)).

> When various officials have taken different actions with respect to a plaintiff, the plaintiff's facile, passive-voice showing that his rights "were violated" will not suffice. Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that "defendants" infringed his rights. Rather, it is incumbent upon a plaintiff to "identify *specific* actions taken by *particular* defendants" in order to make out a viable § 1983 . . . claim.

*Pahls v. Thomas*, 718 F.3d 1210, 1225-26 (10th Cir. 2013) (emphasis in original and internal citations omitted).

The Second Amended Complaint does not provide each defendant with the required "fair notice."[9] For example, the third claim simply refers to the "said named Defendants," "each named defendant," or "the named defendants" in alleging that Mr. Richardson was kept "in a serious, physical, mental environment."  While the Second Claim for Relief specifically mentions Dr. Fisher and Defendant Baroni, it does not attribute any affirmative conduct to any other Defendant.  Rather, the second claim refers generally to "the deliberate disregard to Plaintiff's ADA approved accommodations by all named defendants" and unspecified actions and continuing actions by "named defendant."  (*See* doc. # 18 at 9 of 14).  Such sweeping statements will not suffice to place each Defendant "on notice of his or her alleged misconduct sufficient to prepare an appropriate defense."  *Id.*

In conclusion, I find that the Second Amended Complaint fails to properly allege a violation of the

---

[9]Although the court must liberally construe the Second Amended Complaint, I cannot assume that Mr. Richardson can prove facts that have not been alleged.  *See Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint").

Eighth Amendment by any of the CDOC Defendants and those claims should be dismissed.[10]

D.     *Physical Injury*

It is well-established that in an action brought pursuant to 42 U.S.C. § 1983, a  plaintiff must provide not only a constitutional violation, but also demonstrate that the constitutional deprivation caused him some actual injury.  *Miner v. City of Glen Falls*, 999 F.2d 655, 660 (2d Cir. 1993).  The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, has heightened this requirement by barring a prisoner from bringing a civil action "for mental or emotional injury suffered while in custody without a prior showing of physical injury."  *See* 42 U.S.C. § 1997e(a) and (e).[11]

"[A]lthough claims for mental and emotional distress can be brought pursuant to § 1983, . . . § 1997e(e) provides that 'such a suit cannot stand unless the plaintiff has suffered a physical injury in addition to mental or emotional harms.'"  *Turner v. Schultz*, 130 F. Supp.2d 1216, 1222-23 (D. Colo. 2001) (quoting *Perkins v. Kansas Department of Corrections*, 165 F.3d  803, 807 (10th Cir. 1999)). However, the CDOC Defendants' argument sweeps too broadly to the extent they suggest that Mr. Richardson is barred from any monetary award in the absence of physical injury.  *Cf. Calhoun v. Detella*, 319 F.3d 936, 940-43 (7th Cir. 2003) and cases cited therein.

In the Second Amended Complaint, Mr. Richardson contends that his return to BVCF and the actions of the defendants "threaten[ed] his welfare being physical [and] mental."  Plaintiff further claims

---

[10]Given this finding, Mr. Richardson's request for injunctive relief based upon alleged constitutional violations must also fail.  *Cf. Schrier v. University of Colorado*, 427 F.3d 1253, 1258 (10th Cir. 2005) (holding that a permanent injunction is an extraordinary remedy and, therefore, the right to relief must be clear and unequivocal).

[11]While the PRLA requires "physical injury," the threshold may not be particularly high. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (suggesting that the PRLA requirement should be construed consistent with the "well-established Eighth Amendment standard," and must be more than *de minimis,* but need not be significant).

that Defendants' action caused him "pain and suffering, physical injury, [and] physical limitations."  Mr. Richardson alleges that following his return to BVCF in October 2012, he fell "numerous times" and faced a continued "risk of injury and . . . falling."  The Second Amended Complaint does not describe how many times Mr. Richardson fell after his return to BVCF, how those falls occurred, and whether or to what extent he sustained any physical injuries proximately caused by those falls.

At this juncture, it is not at all clear that Mr. Richardson is seeking compensatory damages for emotional or mental injuries, or that Mr. Richardson suffered more than a *de minimis* physical injury as a result of conduct attributable to the CDOC Defendants.  Based on the allegations presently before the court, I must conclude that Mr. Richardson has failed to present factual allegations that would permit an award of damages for emotional or mental injury.  The PLRA does not preclude nominal or punitive damages.  *Cf. Searles v. Van Bebber*, 251 F.3d 869, 881(10th Cir. 2001); *Brosh v. Duke*, No. 12-cv-00337-CMA-MJW, 2012 WL 5289536, at *6-7 (D. Colo. Oct. 24, 2012).

E.      *Plaintiff's ADA Claim*

Although the Second Amended Complaint does not expressly assert a claim under the Americans with Disabilities Act, Mr. Richardson refers to his "disabilities," insists that he was declared eligible for "ADA accommodations," and that Defendants subsequently denied those "ADA approved accommodations" following his return to BVCF in October 2012.  Out of an abundance of caution, Defendants devote slightly more than a page of their 15-page Motion to Dismiss to arguing that Mr. Richardson has not alleged facts that would demonstrate an actionable claim under the ADA.  In his response brief, Mr. Richardson reiterates that his action is brought under § 1983 to "redress deprivation, under color of state law, of rights secured by the Constitution of the United States."  Although Mr. Richardson continues to assert that Defendants violated the Americans with Disabilities Act, his response brief does not address directly the arguments advanced in Defendants' Motion.

As previously noted, Plaintiff's pleading must be construed liberally because he is representing himself.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards that formal pleadings drafted by lawyers"); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[a] pro se litigant's pleadings are to be construed liberally") (citations omitted). However, a plaintiff may not defeat a motion to dismiss by alluding to facts that have not been alleged, or by suggesting violations that have not been pled.  *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").  In this case, Mr. Richardson's passing references to "ADA accommodations" leave the court wrestling with allegations and legal arguments that are ill-defined at best.  Compounding the problem, the Second Amended Complaint seeks injunctive relief that may be largely, if not completely, moot in light of Mr. Richardson's transfer to Fremont Correctional Facility.  In the final analysis, however, I must determine whether the Second Amended Complaint alleges an ADA claim that is plausible on its face.

Title II of the Americans with Disabilities Act states, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  *See* 42 U.S.C. § 12132.  This provision applies to prisoners. *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998).  "To state a claim under Title II, the plaintiff must allege that (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits . . . was by reason of a disability."  *Robertson v. Las Animas County Sheriff's Dept.*, 500 F.3d 1185, 1193 (10th Cir. 2007).  To establish the third element of a *prima facie* ADA claim,

the plaintiff must "present some affirmative evidence that disability was *a* determining factor" in the decision to exclude the plaintiff from services, programs, or activities. *Selenke v. Med. Imaging of Colorado*, 248 F.3d 1249, 1259 (10th Cir. 2001). Although discriminatory motive need not be the sole reason for the defendant's actions, it must be a "determining factor." *Carter v. Pathfinder Energy Services, Inc.*, 662 F.3d 1134, 1149 (10th Cir. 2011). *Cf. Muhammad v. Department of Corrections*, 645 F. Supp. 2d 299, 314 (D. N.J. 2008) (holding that prisoner amputee stated an actionable claim under Title II of the ADA after he was transferred from a handicapped accessible cell to the upper-level bunk of a second floor cell with limited access to the handicapped-accessible shower, without any penological explanation for the transfer). *See also Pierce v. County of Orange,* 526 F.3d 1190, 1221 (9th Cir. 2008) ("an inmate cannot be categorically excluded from a beneficial prison program based on his or her disability alone").

The ADA is intended to "eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and able-bodied." *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998). A "qualified individual with a disability means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *See* 42 U.S.C. § 12131. A disability within the meaning of the ADA is, *inter alia*, "'a physical or mental impairment that substantially limits one or more of the major life activities' of an individual." *Robertson*, 500 F.3d at 1193-94 (quoting 42 U.S.C. § 12102(2)(A)). "Individuals attempting to prove disability status under this test may not merely rely on evidence of a medical diagnosis of an impairment." *Id.* "Instead, the ADA requires those 'claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their

impairment] in terms of their own experience . . . is substantial.'" *Id.* at 1194 (internal quotation marks and citations omitted).

The Second Amended Complaint alleges that prior to August 2011, Mr. Richardson suffered from a "chronic knee injury" that has significantly limited his mobility.  In August 2011, Mr. Richardson was placed on medical restrictions that included "no stairs and no standing more than 20 minutes," as well as "lower tier, lower bunk, cane, knee brace and no squatting."  The Second Amended Complaint also alludes to, but does not describe, various "ADA approved accommodations" that Mr. Richardson received in 2011 and 2012.[12]  For purposes of the instant motion, I will presume, without deciding, that Plaintiff's chronic knee condition substantially limited his mobility and qualifies as a disability under the ADA.

Unfortunately, the Second Amended Complaint leaves unclear the nature of Mr. Richardson's presumed ADA claim.  In the Second Claim for Relief, which is captioned "8th Amendment Cruel & Unusual Punishment," Mr. Richardson alleges that Dr. Fisher and Defendant Baroni improperly removed his medical restrictions without any prior physical examination, and that Dr. Fisher thereafter "falsified" Plaintiff's medical records and only provided treatment for tendentious.  Yet, "the failure to provide medical treatment to a disabled prisoner, while perhaps raising Eighth Amendment concerns in certain circumstances, does not constitute an ADA violation."[13]  *Rashad v. Doughty*, No. 00-6088, 4 F. App'x 558, 560 (10th Cir. 2001).  As the Tenth Circuit noted in *Nasious v. Colorado*, No. 11-1450, 495 F. App'x

---

[12]"Title II's implementing regulations provide that '[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the services, program, or activity." *Phipps v. Sheriff of Cook County*, 681 F. Supp. 2d 899, 914 (N.D. Ill. 2009) (citing 28 C.F.R. § 35.130(b)(7)).

[13]In that regard, this court notes that in his Request for Relief, Mr. Richardson asks that his ADA accommodations be "replaced until D.O. C. either fixes Plaintiff's medical issues" or places him "in a facility where Plaintiff is able to access all programs" and services available to other inmates.

899, 902 (10th Cir. 2012), "the ADA does not provide a remedy for medical negligence or a means to challenge 'purely medical decisions' regarding the propriety of a course of treatment." *See also Simmons v. Navajo County*, 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability."); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (suggesting that the ADA could not be used to do "an end run" around those decisions that have refused to transform the Eighth Amendment into a medical malpractice statute); *Alexander v. Tilton*, No. 1:07-cv-00759-LJO-DLB PC, 2009 WL 464486, at & (E.D. Cal. Feb. 24, 2009) (noting that "other courts have found that the ADA . . . does not create a federal cause of action for prisoners challenging the medical treatment provided for their underlying disabilities").

To further compound the difficulty in deciphering Plaintiff's "ADA claim," the Second Amended Complaint alleges generally that the CDOC Defendants "deliberately disregarded" his "ADA approved accommodations" but does not attribute any specific discriminatory conduct to the CDOC Defendants. Rather, Mr. Richardson seems to fault these Defendants for not immediately effecting his transfer following his return to BVCF in October 2012. Title II, however, only provides damages if a public official intentionally discriminates because of a disability. *See Garcia v. S.U.N.Y Health Services Center of Brooklyn*, 280 F.3d 98, 111-12 (2d Cir. 2001) (holding that a private suit for money damages under Title II may only be maintained where the plaintiff establishes that the violation was motivated by either discriminatory animus or ill will due to the disability).[14] As the court noted in *Morris v. Kingston*, No. 09-3326, 368 F. App'x 686, 690 (7th Cir. 2010), while a prison official's delay in accommodating an inmate's disability might be negligent, "negligence alone cannot support a Title II claim." *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are 'merely consistent with' a

---

[14]Also, punitive damages may not be awarded in a private cause of action brought under Title II of the ADA. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002).

defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'").

Even if Mr. Richardson properly pled a Title II claim, he cannot sue the CDOC Defendants in their individual capacities. The ADA does not create liability against individuals who do not otherwise qualify as employers under the statutory definition. *See Butler v. City of Prairie Village, Kansas*, 172 F.3d 736, 744 (10th Cir. 1999) (noting that the reasons for precluding individual liability under Title VII apply equally to ADA). *Cf. Sindram v. Merriwether*, 507 F. Supp. 2d 7, 11-12 (D.D.C. 2007) and cases cited therein. "[T]he proper defendant in a Title II claim is the public entity itself or an official acting in his or her official capacity." *Hicks v. Keller*, No. 11-cv-0422-WJM-KMT, 2012 WL 1414935, at *6 (D. Colo. April 24, 2012). Any ADA claims against the CDOC Defendants in their individual capacities must be dismissed.

Finally, Mr. Richardson's ability to obtain injunctive relief for the CDOC Defendants' alleged violation of Title II may be moot in light of more recent events. Mr. Richardson has been transferred from BVCF and, therefore, is no longer under the authority of the staff of that facility. *Cf. Nasious*, 495 F. App'x at 903 ("[i]t is well-settled that a prisoner's transfer out of a prison moots his requests for declaratory or injunctive relief against staff at that prison"). *See also Burnett v. Jones, No. 11-6093,* 454 F. App'x 655, 657 (10th Cir. 2011) (holding that claims for injunctive relief are moot where a prisoner has been transferred and is no longer subject to the conditions of confinement on which his claims are based). This court has not been provided with any information to suggest that Mr. Richardson does not have reasonable access to all the facilities, programs or activities at Fremont Correctional Facility.

Mr. Richardson has filed a Complaint (doc. # 1), an Amended Complaint (doc. # 14), and a Second Amended Complaint (doc. # 18). On April 23, 2013, the court gave him permission to file a Third Amended Complaint. Mr. Richardson did not take the opportunity to file a Third Amended

Complaint.  At this juncture, I conclude that Mr. Richardson has not alleged facts that would support a proper claim for disability discrimination under Title II of the ADA.  I recommend that the Second Amended Complaint be dismissed without prejudice to the extent it encompasses a claim under Title II of the Americans with Disabilities Act.

## CONCLUSION

For the foregoing reasons, I recommend that the CDOC Defendants Motion to Dismiss (doc. #41) be granted and that the Second Amended Complaint be dismissed without prejudice as to Defendants Butler, Davis, Cotten, Baroni and Campbell, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  I further recommend that Defendant Fisher be dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m).

**Advisement to the Parties**

Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision

to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED this 28th day of January, 2014.

BY THE COURT:


s/ Craig B. Shaffer
United States Magistrate Judge